## HOLMES v. BOARD OF EDUCATION OF CITY OF NEW YORK.

(Municipal Court of City of New York, Borough of Brooklyn, Fourth District. December, 1909.)

1. SCHOOLS AND SCHOOL DISTRICTS (§ 144*) — SALARY OF TEACHERS — HIGH SCHOOL SCHEDULE.

Under section 310 of the by-laws of the Brooklyn school board, providing that all increases in the pay of teachers shall begin on the 1st day of the month immediately succeeding the month during which the teacher shall become entitled thereto by reason of promotion, experience, or otherwise, the high school schedule adopted by the board on March 7, 1899, providing for an annual increase of $100 in the salary of high school teachers till a maximum sum was reached, went into effect and applied to the salaries of all high school teachers in the borough on April 1, 1899.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 311; Dec. Dig. § 144.*]

2. SCHOOLS AND SCHOOL DISTRICTS (§ 144*)—SCHOOL TEACHERS—COMPENSATION—PROGRESSION.

Under Greater New York Charter (Laws 1897, p. 394, c. 378) § 1091, as amended by Laws 1900, p. 1607, c. 751, § 4, providing that each school board shall have power to fix salaries of the teaching staff, and that such salaries shall be regulated by length of service or by experience in teaching of the incumbent in charge, the scheme of compensation to teachers in the school system beginning with the creation of the greater city has been on a basis of progression, regulated by length of service and by experience in teaching.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 311; Dec. Dig. § 144.*]

3. SCHOOLS AND SCHOOL DISTRICTS (§ 144*)—HIGH SCHOOL TEACHERS—SALARIES.

Laws 1899, p. 883, c. 417, amending Greater New York Charter (Laws 1897, p. 394, c. 378) § 1091, and providing that no school teacher's salary shall be reduced by operation of the act, did not affect the salaries of high school teachers in the borough of Brooklyn, as established by the schedule of the Brooklyn board in force April 1, 1899, which was expressly continued in force by School Board By-Laws, § 329, declaring that the salary of high school teachers, etc., shall be at the same rate as paid on that date, and providing for an annual increase in the salary of such teachers until a maximum had been reached.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 311; Dec. Dig. § 144.*]

4. SCHOOLS AND SCHOOL DISTRICTS (§ 144*)—SCHOOL TEACHERS—SALARIES—
"RATE."
   Brooklyn School Board By-Laws, § 329, provides that the salaries of
teachers and clerks in the high schools shall be at the same "rate" as
paid April 1, 1899, in accordance with a progressive schedule giving an
annual increase of $100, in force April 1, 1899. Laws 1900, p. 1607, c.
751, § 4, provides for the salary of high school teachers, fixing them spe-
cifically the same as in the schedule referred to, and in all cases providing
for an annual increment of $110. *Held*, that the word "rate," as used in
the by-law, was not intended to mean a fixed amount, but a progressive
salary; and hence the by-law did not make the rates recited in the sched-
ule fixed and unchangeable.

   [Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig.
§ 311; Dec. Dig. § 144.*

   For other definitions, see Words and Phrases, vol. 7, pp. 5925, 5926;
vol. 8, p. 7778.]

5. INTEREST (§ 44*)—LIQUIDATED CLAIMS—WITHHELD SALARY.
   A claim by high school teachers for withheld salary to which they were
legally entitled should be regarded as liquidated; and hence the teachers
were entitled to recover interest from the time the claim accrued, and not
only for six years.

   [Ed. Note.—For other cases, see Interest, Cent. Dig. § 93; Dec. Dig. §
44.*]

Action by Frank W. Holmes against the Board of Education of the
City of New York. Judgment for plaintiff.

Ira Leo Bamberger and Sidney Lowenthal, for plaintiff.
Francis K. Pendleton (Stephen O'Brien, of counsel), for defendant.

WILLIAMS, J. This action is for the recovery of back pay by
a high school teacher in the borough of Brooklyn, claimed to be due
to him and his assignors, also high school teachers in that borough,
from the defendant. The claims are based upon a certain schedule
of salaries of high school teachers adopted by the school board of the
borough of Brooklyn, March 7, 1899, under which plaintiff contends
for himself and assignors that for the periods of time covered by their
claims a greater sum should have been paid them for their services
than was actually received by them; that they were entitled under that
schedule to the benefit of the annual increment of $100 therein pro-
vided, which was withheld for the period aforesaid.

In this and the actions of other high school teachers upon similar
claims tried at the same time, no question is raised as to the employ-
ment of the various claimants, the rendition of service for the periods
covered by their claims, and the actual sums received by them during
such periods, nor as to their years of experience and the amounts the
plaintiffs, respectively, are entitled to recover if their theory be adopted
are stipulated in the record. The defendant concedes in all of their
actions the plaintiffs are entitled to recover the difference between the
amounts they and their assignors received April 1, 1899, and the
sum they were actually paid during the periods here involved. The
amounts that may be recovered by them on defendant's theory are also
stipulated in the record.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The concession of defendant is not because it agrees to plaintiff's contention that high school teachers are entitled to the annual increment provided by the schedule of March 7, 1899; for it contends to the contrary, and as a matter of fact claims that the salaries are stationary, or, in other words, that during the periods here in question they remained at the actual sums or salary paid these teachers on the 1st day of April, 1899. It appears that most of the claimants were not paid during the periods here involved upon even the present theory of defendant as to their proper compensation; hence the concession by it that they are entitled in any event to recover in these actions.

The right to recover the amount claimed by plaintiffs is dependent upon the effect of the schedule of March 7, 1899, heretofore adverted to, upon the compensation of high school teachers. In the year 1898 the school board of the borough of Brooklyn lawfully adopted by-laws for its government and the regulation of the school system in that borough, and among them was one regulating appointments and salaries of teachers and denominated section 310 (see Plaintiff's Exhibit 11, page 3 of record). This section, among other things, provides:

"That all increase in the pay of teachers shall begin on the first day of the month immediately succeeding the month during which the teacher shall become entitled thereto by reason of promotion, experience or otherwise."

On the 7th day of March, 1899, such board, having authority and power to that end, adopted what is termed "high school schedule" (see Plaintiff's Exhibit 1, page 2 of the record). This was a high school schedule of salaries, and provides for an annual increment or increase of salary of $100 in the salary of high school teachers until a maximum sum is reached. That such schedule went into operation and became effective under section 310 of the by-laws heretofore referred to on the 1st day of the month succeeding its adoption—i. e., April 1, 1899— is unquestioned. Hence on and from that date we have for the regulation of the salaries of high school teachers the schedule in question.

The scheme of compensation to teachers in the school system beginning with the creation of the greater city has been upon a basis of progression, regulated by length of service and by experience in teaching. The Greater New York charter (section 1091, c. 378, p. 394, of the Laws of 1897) and the amendment to the charter by chapter 751, p. 1605, of the Laws of 1900, commonly known as the "Davis Law," make this clear beyond peradventure. That there was no misapprehension on the part of the school board as to the mandatory character of the original charter provision referred to is evidenced by its subsequent adoption of salary schedules in conformity thereto. Particularly do I refer to the schedule of March 7, 1899.

The language of section 1091 of the charter on the subject is indeed impressive, and there can be no doubt as to the intent of its framers:

"Each school board shall have power to fix salaries of the teaching staff, and that such salaries shall be regulated by length of service or by experience in teaching of the incumbent in charge."

There is no question but what the schedule of March 7, 1899, became binding upon the board upon the 1st day of April, 1899, and regulated

the salaries of high school teachers, and no change appears to have been made in it, so far as the board is concerned, up to and during the period of time for which claim is here made, so that we must look to subsequent statutory enactment for any limitation or restriction upon its operation.

Chapter 417, p. 883, of the Laws of 1899, amending section 1091 of the charter (known as the "Ahearn Bill"), was enacted and took effect April 25, 1899. It provides that:

"No salary now paid to any public school teacher shall be reduced by operation of this act."

This enactment certainly did not affect the schedule of salaries in question. To the 29th of December, 1899, no action of any kind appears to have been taken by the board respecting the salary schedule of the high school teachers, but on that date the board adopted a new schedule of salaries for elementary schools by an amendment of its by-laws; but this amendment in no manner affected the salaries of high school teachers, as will be observed upon reading it. At this same time section 329 of its by-laws was adopted, as follows:

"Sec. 329. The salaries of teachers and clerks in the high schools, in training schools for teachers, and the salaries of directors and teachers of special branches, shall be at the same rates as paid April 1, 1899."

That this in effect was a continuance and readoption of the schedule of March 7, 1899, will hardly be disputed, for the rates paid April 1, 1899, were those of the schedule of March 7, 1899, and the words "April 1, 1899," clearly identify that schedule.

On the 3d of May, 1900, an amendment to the charter was passed (chapter 751, p. 1065, of the Laws of 1900), commonly known as the "Davis Law." This act provides for the salaries of high school teachers, fixing them substantially the same as in the schedule of March 7, 1899, in some instances higher, but in none lower, and in all cases provides for an annual increment of $110, instead of $100 as provided by the schedule referred to. This act also provided that all members of the teaching staff shall receive pay for the year 1900, from the 1st day of January, in conformity with its provisions, and declares the section containing this provision retroactive to January 1, 1900. This act further provides that the salaries of teachers shall be regulated by the length of service and by the experience in teaching, and, further, that no salary then being paid the teaching staff shall be reduced by operation of the act, and that the salaries shall be paid in twelfths, instead of tenths, as theretofore.

To the time of the enactment of the Davis law, as has been shown, no change was made in the schedule of March 7, 1899; hence it follows that the claims here of high school teachers are regulated and may be sustained, not alone by the schedule of March 7, 1899, but by the provisions of the Davis law just referred to, unless the language of section 329 of the board's by-laws, adopted December 29, 1900, is to be construed as fixing the salaries invariably at the sums actually received by the teachers on April 1, 1899, so that it becomes unnecessary to consider the question of the constitutionality of the retroactive provision of the Davis law.

The last act of the board with respect to the salaries of high school teachers during the period here involved was the adoption on December 29, 1899, of section 329 of its by-laws, and which has hereinbefore been quoted. It is obvious that the words "same rates as paid April 1, 1899," used in this by-law are the rates—that is, the salary—provided to be paid under the schedule of March 7, 1899, and which, as heretofore stated, became effective and operative on April 1, 1899; for there were no other rates than those of that schedule on the 1st day of April, 1899.

It is quite impossible to reconcile the language of this by-law with an intent to change the schedule in question so that the salaries therein provided for should be and remain the same invariable sums which were actually received by the teachers on April 1, 1899. If such was the intention it is inconceivable that apt and appropriate language was not used to make it clear. That it was not so intended, but that the board was concerned in the readoption in effect of the schedule of March 7, 1899, would seem indisputable, in view of the mandatory provisions of the charter, which it evidently had in mind when it originally adopted the schedule in question.

It is quite unnecessary to discuss the definition of the word "rates," which all standard authorities define to mean something progressive, and the very opposite of fixed and immutable; for the intent of the board in the by-laws under discussion seems too plain. The Appellate Division has already settled this proposition against defendant in Doggett v. Board of Education, 120 App. Div. 885, 105 N. Y. Supp. 1113, which case involved the same question and was affirmed without opinion. Mr. Justice Gaynor in Holmes v. Board, etc., and Low v. Board, etc. (no opinion filed), has likewise decided against defendant.

The schedule of March 7, 1899, was in force and was binding upon the board to May 3, 1900, unless the Davis law fixing the salaries of the teachers is retroactive to January 1, 1900; but, assuming it to be so, no advantage to the board will be derived in these cases by so deciding, for the claims here would not be in any wise lessened, for, as heretofore said, that law did not reduce any salary below that fixed in that schedule, and the same may be said respecting the few claims covered by these suits for difference in salary subsequent to May 3, 1900, and payment to them should have been made accordingly.

The plaintiff in this action is entitled to recover the sum stipulated to be due him on the theory of his claim, and the other plaintiffs likewise, and judgments are rendered in accord with this conclusion.

Objection is made to the allowance of interest on the respective claims for more than six years; but on this question the case of Shaul v. Board of Education, 108 App. Div. 21, 95 N. Y. Supp. 479, is controlling, and accordingly interest is allowed in effect from the time the claim matured or accrued.